## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **Case No. 23-CR-404 (JEB)** |
| v. | : | |
| | : | |
| JOSHUA PARMENTER, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Joshua Parmenter has pleaded guilty to two Class B misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). For the reasons set forth herein, the government requests that this Court sentence Parmenter to 14 days incarceration on Count Three and 36 months' probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

## I.      Introduction

Defendant Joshua Parmenter, a 28-year-old delivery driver from Lancaster, Ohio, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the

peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Parmenter pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) and (G). The government's recommendation is supported by Parmenter's (1) observation of chaos on the grounds before entering the building; (2) entering the Capitol through the Senate Wing Doors, a pivotal breach point; (3) lying to the FBI about his conduct on January 6; and (4) failure to date to express any remorse for his conduct on January 6.

The Court must also consider that Parmenter's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Parmenter's crime support a sentence of 14 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service, and $500 in restitution in this case.

## II.    Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary repetition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 25 at 1-4.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

*Defendant Parmenter's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Parmenter traveled from his home in Lancaster, Ohio to Washington D.C. to attend the "Stop the Steal" rally. Parmenter went to the Ellipse and followed the crowd to the U.S. Capitol where he participated in the riot there.

Parmenter entered the restricted grounds of the U.S. Capitol on the West Front. He traveled near the media tower and the inauguration stage. At that time, rioters were chanting and there was a visible chemical irritant in the air. That irritant caused a rioter standing next to Parmenter to cough and hold a cloth over his mouth.  *See* Image 1.




*Image 1: Still from YouTube Video of Parmenter Near the Media Tower[2]*

*Image 2: Still From Open Source Video of Parmenter near the Inauguration Stage*

Instead of exiting the restricted grounds, Parmenter moved closer to the Capitol building. At approximately 3:06 p.m. while alarms were blaring, Parmenter entered the U.S. Capitol building through the Senate Wing Doors. He walked past the shattered windows lying on the ground next to those doors.

---

[2] Please see attached video as Exhibit D (timestamp 52:00 – 52:44)



*Image 3: Still Image of CCTV Depicting Parmenter Entering the U.S. Capitol Through the Senate Wing Doors at approximately 3:06 p.m.[3]*

After Parmenter was inside the building he walked in the Senate Wing Hallway towards the Crypt, went inside an office, took selfie photos, and later exited the U.S. Capitol building through the Senate Wing Doors at approximately 3:09 p.m. *See* Images 4 -5.



*Image 4: Still Image of Open Source Video Depicting Parmenter inside the Senate Wing Hallway Leading to the Crypt[4]*

---

[3] Please see attached video as Exhibit A (timestamp 1:34 – 1:58)
[4] Please see attached video as Exhibit B (timestamp 15:45 – 15:55)



*Image 5 – Selfie Photo of Parmenter Inside an Office at the U.S. Capitol building*

*Parmenter's Text Messages*

On January 7, 2021, Parmenter sent a series of text messages to others, stating that he was

at the Capitol on January 6 and saw violence on the grounds.

January 7, 2021 Outgoing Messages From Parmenter:
- "I was one of the ones to make in into the capitol building. We took some selfies in some senators office lmao"
- "Cops were everywhere tho, so I didn't stay long after that lmao"
- "But that event was something else. The pepper spray burns like no other. And flashbangs are no joke either."
- "I feel like it should have been much harder to get into the building that it was."
- "A guy got tazed in front of me…"

*Parmenter's Post-Arrest Interview with the FBI*

On May 19, 2021, Parmenter interviewed with the FBI. During the interview, Parmenter

admitted going to Washington, D.C. on January 6 and attending the rally to show his support for

former President Trump and to protest against the election. He also admitted to being present on

the U.S. Capitol grounds. However, he lied to the interviewing FBI agents that he only stood

outside of the Capitol building and could easily see inside but did not enter. After that interview,

the FBI agents found videos and photos of Parmenter entering the U.S. Capitol building.

*Parmenter's Post-Plea Interview with the FBI*

On July 15, 2024, Parmenter was interviewed by the FBI. During the interview, Parmenter admitted to going inside the Capitol and decided to leave because his phone was dying. While on the Capitol grounds, Parmenter took a video and later posted it to his Facebook account.[5] When Parmenter was confronted about his lie—not going inside the Capitol building—during the initial interview in May 2021, Parmenter indicated that at that time of the interview in May 2021 he said he could not recall. When asked about his actions on January 6, Parmenter stated that it was a waste of time.

*The Charges and Plea Agreement*

On November 15, 2023, the United States charged Parmenter by a four-count Information with violating 18 U.S.C. § 1752(a)(1) and (a)(2) and 40 U.S.C. § 5104(e)(2)(D) and (2)(G). On April 22, 2024, pursuant to a plea agreement, Parmenter pleaded guilty to the § 5104 counts.  By plea agreement, Parmenter agreed to pay $500 in restitution to the Architect of the Capitol.

**III.    Statutory Penalties**

Parmenter now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (2)(G). As noted by the plea agreement and the U.S. Probation Office, Parmenter faces up to six months of imprisonment and a fine of up to $5,000. Parmenter must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

---

[5] Please see attached video as Exhibit C.

## IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. As described below, the Section 3553(a) factors weigh in favor of a sentence of 14 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service, and $500 in restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Parmenter's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Parmenter, the absence of violent or destructive acts is not a mitigating factor. Had Parmenter engaged in such conduct, he would have faced additional criminal charges.

The most aggravating factor in this case is Parmenter's lies to FBI agents that he did not enter the Capitol building. Additionally, had Parmenter entered the Capitol building and then truthfully told the FBI agents he had done so, the Government would have regarded this case as comparatively less serious. Parmenter's lie not only caused FBI agents to expend additional time and effort to fully investigate this case; it also showed contempt for the criminal justice system. Indeed, Parmenter's lie was very likely a violation of a federal felony statute: 18 U.S.C. § 1001(a). Parmenter not only lied to the FBI, he took selfies inside the building, and on January 7, he bragged to others via text messages about going inside the Capitol. Accordingly, the nature and the

circumstances of this offense establish the clear need for a sentence of 14 days' incarceration in this matter.

### B.  Parmenter's History and Characteristics

As set forth in the PSR, Parmenter does not have a criminal history and he has been complaint with the conditions of his pretrial release. ECF 22 at ¶¶ 12, 28. The PSR does not list any health problems, substance abuse or mental illness. ECF 22 at ¶¶ 47-49. Prior to January 6, Parmenter graduated from Bloom-Carrol Local High School and he currently works as a delivery driver for a package delivery company. ECF 22 at ¶ 51, 56.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration.

Parmenter's actions on January 6, 2021, indicate the need for a sentence that provides specific deterrence. Parmenter did not accept the results of the 2020 presidential election, so on January 6 he went to Washington D.C., invaded the Capitol, took selfie photos, and stayed on Capitol grounds to watch other rioters continue their violent rampage. After January 6, Parmenter sent messages bragging about his actions, and then lied about his involvement on January 6, claiming he did not go inside the building. When confronted with his lie, Parmenter claimed he did not recall. This behavior shows his conduct was not a momentary lapse in judgement, but instead a willful and alarming disregard of the chaos and violence that surrounded him. Parmenter actions on January 6 in combination with his lack of truthfulness after January 6 makes it clear

that a sentence involving incarceration is needed to successfully deter Parmenter from such thoughtless behavior in the future.

    With the 2024 presidential election approaching and many loud voices in the media and online continuing to sow discord and distrust, the potential for a repeat of January 6 looms ominously. The Court must sentence Parmenter in a manner sufficient to deter him, and others generally, from going down that road again.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

    As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[6] This Court must sentence Parmenter based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

    Parmenter has pleaded guilty to Counts Three and Four of the Information, charging him with violations of 40 U.S.C. §§ 5104(e)(2)(D) and (2)(G). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

---

[6] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Louis Valentin*, 21-cr-702, the defendant pled guilty to violating of 40 U.S.C. § 5104(e)(2)(G). Similar to Parmenter, Valentin went inside the Capitol, minimized his conduct when speaking to FBI agents. This Court imposed a sentence of 10 days of intermittent confinement.

In *United States v. Savannah McDonald*, 21-cr-00429 (CRC), the defendant also pled guilty to violating 40 U.S.C. § 5104(e)(2)(G). Similar to Parmenter, McDonald spent time on the West Front of the Capitol grounds and observed chaos before entering the Capitol building, and entered near the Senate Wing Door (through the Senate Fire Door which had been opened shortly before by two rioters who had entered through the Senate Wing Door). McDonald took and sent videos on January 6th through her Snapchat account. The court imposed a sentence of 21 days' incarceration in that case. Parmenter took photos inside the building, he entered the building through the same area as McDonald and lied about that conduct to the FBI after January 6. This warrants a sentence of incarceration.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize

and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[7] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Parmenter must pay $500 in restitution, which reflects in part

---

[7] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

the role Parmenter played in the riot on January 6.[8] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Parmenter's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 85.

## VI.    Fine

Parmenter's convictions for violations of 40 U.S.C. § 5104(e)(2)(D) and (2)(G) subject him to a statutory maximum fine of $5000. S*ee* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider Parmenter's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). Here, Parmenter's financial assets set forth in the PSR suggest that Parmenter is unable, and is unlikely to become able, to pay a fine.

---

[8] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VII.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Parmenter to 14 days incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service, and $500 in restitution.

Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Parmenter liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

BY:    _Nialah S. Ferrer_
Nialah S. Ferrer
Assistant United States Attorney
New York Bar No. 5748462
601 D Street, NW
Washington, D.C. 20530
(202) 557-1490
Nialah.Ferrer@usdoj.gov